150 So. 852

## STATE v. HAGAN.

No. 32475.

Oct. 30, 1933.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and John Fred Odom, Dist. Atty., and Fred S. Le Blanc, Asst. Dist. Atty., both of Baton Rouge (James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

LAND, Justice.

From a sentence of not less than eight nor more than twelve years in the state penitentiary for a conviction of administering poison to her husband with intent to murder, defendant has appealed and relies for reversal upon the following bills of exceptions.

#### Bills 1, 2, and 3.

All of these bills were reserved to evidence offered by the state to show illicit relations by defendant with one Rabey. The evidence was objected to by counsel for defendant on the ground that it put the character of the defendant at issue.

The district attorney, when offering the evidence, stated that it was to prove motive for the attempted poisoning; the purpose of the defendant being to get rid of her husband, and thereby to indulge in illicit intercourse with her paramour, uninterruptedly and without interference from her husband.

The evidence was properly admitted by the trial judge. Illicit intercourse is a strong circumstance for the jury to consider in the motive prompting the accused to desire to remove her husband in order that she might become the undisturbed mistress or even the wife of her paramour. Underhill on Criminal Evidence (3d Ed.) p. 207; Wharton's Criminal Evidence (10th Ed.) p. 1652.

## Bill 4.

In his closing argument to the jury, the district attorney made the following statement: "The testimony is that every time Nat Hagan (the husband) left his house, he left his wife there; that when he came back he found her there; that if she had left that house during any of his trips, don't you know, gentlemen, that you would have had some witness here to testify to that? Don't you gentlemen know that some of those neighbors, somebody where she went would have seen her? Don't you gentlemen know that if she had gone to the grocery store. * * * "

At this juncture, counsel for defendant objected that the district attorney was commenting upon the failure of the defendant to take the stand and testify.

The district attorney, continuing, said: "* * * The clerk who waited on her would have been here and told you, 'She was in my store at three o'clock, or four o'clock, or five o'clock.' You saw the number of people around there. Don't you know that if she had gone across the street to a neighbor's house, that neighbor would have been here to tell you that? But you have no such testimony. Of all the raft of witnesses, none ever said that Mary Hagan left that house during that afternoon. The only testimony you have is that of Nat Hagan that she got in an automobile and went away." Tr. p. 31.

This objection was overruled by the trial judge for the reason that the statement made by the district attorney could not be construed as a reference to the failure of defendant to take the witness stand, as that officer simply said that, if the accused had left during some of her husband's trips, some one would have seen her and could have testified to it.

We find no error in this ruling of the judge a quo.

## Bill 5.

Among the grounds for a new trial defendant alleged that she had discovered new evidence, which consisted of the testimony of several witnesses to prove that Mary Hagan, defendant, was not at the house when they were there. One of these witnesses would also testify that Lena Bailey was on the premises alone when he arrived at the house, and another one of these witnesses would testify that he noticed two men and a woman standing in the front yard of the house and that neither of the parties was Nat nor Mary Hagan.

In the per curiam to this bill, the trial judge states:

"The defendant during the trial placed half a dozen witnesses upon the stand to show that the entire neighborhood received their mail at the home of the Hagans, that when no one was there they entered a side door and helped themselves. It was shown that the entire neighborhood had access to the premises at all times. Proof that one more individual was seen there would be merely cumulative. Both the defense and the prosecution offered evidence to show that Mary Hagan was not at home during the greater part of the afternoon.

"Defendant filed a motion for a new trial, on the ground that the verdict was contrary to the law and the evidence. In that motion she alleges that the 'defense offered proof to

show that the store in which the attempted poisoning took place was open throughout the afternoon and that any one of twenty-five or more persons who entered the store that afternoon could have placed the poison in the beans. The defense further proved that neither Nat Hagan nor Mary Hagan was at home during the entire afternoon and that an unknown party could have placed the poison in the beans.' Additional testimony along that line would be merely cumulative."

The application for a new trial on the ground of newly discovered evidence was therefore properly overruled.

The motion for new trial on the ground that the verdict is contrary to the law and the evidence embraces the objections already noted in bills of exceptions and disposed of, and otherwise presents nothing reviewable by this court.

The conviction and sentence are affirmed.

O'NIELL, C. J., concurs, but not in the reference to cumulative evidence.